HOWARD & HOWARD ATTORNEYS PLLC
Robert Hernquist, Nevada Bar No. 10616
*RHernquist@HowardandHoward.com*
Kimberly P. Stein, Nevada Bar No. 8675
*KStein@HowardandHoward.com*
Wells Fargo Tower, Suite 1000
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169-5980
Telephone: (702) 257-1483
Facsimile: (702) 567-1568

*Attorneys for Plaintiffs Marvin Lipschultz,
and Golden Palm Investments LP*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GOLDEN PALM INVESTMENTS LIMITED PARTNERSHIP, a Nevada limited partnership; and MARVIN LIPSCHULTZ, an individual;<br><br>    Plaintiffs,<br><br>vs.<br><br>DANIEL AZOURI, an individual; JOSEPH SINGER, an individual; and JOSEPH SINGER ENTERTAINMENT GROUP LLC, a California limited liability company;<br><br>    Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Golden Palm Investments LP and Marvin Lipschultz (collectively "Plaintiffs") allege as follows:

### PARTIES

1. Plaintiff Golden Palm Investments Limited Partnership ("GP") is a Nevada limited partnership that at all relevant times was authorized to do business in Nevada.

2. Plaintiff Marvin Lipschultz ("Lipschultz") is and at all relevant times was a resident of Clark County, Nevada.

3. Upon information and belief, at all times relevant Defendant Daniel Azouri

("Azouri") was and is a resident of the State of California.

4. Upon information and belief, at all times relevant Defendant Joseph Singer ("Singer") was and is a resident of the State of California.

5. At all times relevant to this case, Defendant Joseph Singer Entertainment Group LLC ("JSE") was and is an active California limited liability company.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337 because this action arises under the laws of the United States, Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §78aa), 18 U.S.C. §1961 *et. seq.*, and under the doctrine of pendent and/or supplemental jurisdiction.

7. This action arises under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8. Venue is proper in this court pursuant to 29 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted by Plaintiffs occurred in this judicial district.

9. This Court has personal jurisdiction over Defendants because each of them transacted business in Nevada, travelled to Nevada and held meetings with Lipschultz in Nevada during the course of the underlying events that led to Plaintiffs' investment with Defendants.

10. In connection with the acts alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the Internet.

/ / /

/ / /

/ / /

/ / /

## GENERAL ALLEGATIONS

### AZOURI INTRODUCES LIPSCHULTZ TO SINGER AND ENCOURAGES HIM TO MAKE AN INVESTMENT WITH SINGER, AND FAILS TO DISCLOSE THAT HE HAS A FINANCIAL INTEREST IN LIPSCHULTZ'S INVESTMENT

11. Lipschultz first met Azouri at the Cannes Film Festival in approximately 2007. From 2007 through 2011, Lipschultz developed a friendship with Azouri and Azouri's mother ("Perla") based on their mutual interests in business and films.

12. Azouri and Perla visited Lipschultz in Las Vegas, Nevada in 2009 and 2010 and they again discussed mutual interests such as business and films.

13. During one of their visits to Las Vegas in 2010, Azouri and Perla told Lipschultz about their friend, Singer, who is a movie producer. Azouri and Perla told Lipschultz that Singer had always been thorough, complete and informative. Throughout 2010, Azouri and Perla spoke about Singer more and more each time they visited Lipschultz in Las Vegas and/or Cannes, and also suggested that Lipschultz should also invest with Singer.

14. On January 4, 2011, Azouri sent Lipschultz an email stating, *inter alia*:

> I wanted to have a conference call with you along with a partner of mine, Joe Singer (who produced many movies such as Dr. Doolittle, Dante Peak [sic], Courage Under Fire . . . ).
>
> We have an interesting project that we are working on involving some development and I wanted to share with you the project.
> This project is in its final stages and does not requires [sic] much of capital anymore.

15. On January 8, 2011, Lipschultz, Azouri and Singer participated in a conference call during which Singer discussed the movie industry and Singer's status as a self-proclaimed "A producer" with "A actors." Lipschultz then had several conversations thereafter with Singer and Azouri, both in person in Las Vegas as well as on the telephone. Singer told stories about his part in the movie industry and the movies he had produced and his experiences working with actor Eddie Murphy. Singer also discussed his newest "deal", whereby Singer would raise funds for future movie projects by catering to wealthy investors from the United Kingdom; the investments would be structured in such a way as to provide income tax deductions to those

Page 3 of 11

who invested.

16. On January 9, 2011, Azouri sent an email to Lipschultz wherein Lipschultz asked to set up a meeting in Las Vegas or Los Angeles so that Azouri, Singer and Lipschultz could "discuss the project."

17. On January 21, 2011, Lipschultz met with Azouri and Singer at the Bellagio in Las Vegas, Nevada. During the meeting, Singer and Azouri provided Lipschultz with more details regarding the "project": Singer would use Lipschultz's investment to retain lawyers, in both the United States and the United Kingdom, to create the corporation and investigate income tax and regulatory matters.

18. Throughout January and February of 2011, Lipschultz continued to communicate with Singer and Azouri via email and telephone regarding the project.

### THE INVESTMENT AGREEMENT

19. On February 26, 2011, Lipschultz on behalf of GP and Singer on behalf of JSE executed an Investment Agreement (the "Investment Agreement"), whereby Plaintiffs agreed to invest $170,000.

20. The Investment Agreement contains a "Disclaimer" stating that GP "understands that neither the Investment nor the Investor's right to the Return have been registered under the Securities Act of 1933 as amended (the 'Securities Act'), by reason of reliance upon [JSE] on an exemption from the registration requirements of the Securities Act, nor registered under state law pursuant to similar exemptions . . . The Investor is an 'accredited investor' as such term is defined under Rule 501 of the regulations under the Securities Act."

21. Pursuant to the Investment Agreement, it shall be "construed in accordance with, under and pursuant to Nevada law."

### AZOURI AND PERLA TELL LIPSCHULTZ THAT THE INVESTMENT IS GOING WELL, AND CONVINCE HIM TO PROVIDE SINGER WITH ADDITIONAL FUNDS

22. In May of 2011, Lipschultz again met with Azouri and Perla at the Cannes Film Festival. Azouri and Perla both made statements about how hard Singer was working, and

about how profitable the project would be.

23. In July and August of 2011, Azouri and Singer both spoke with Lipschultz on numerous occasions and informed him that the deal was progressing and looked promising.

24. In July and August of 2011, Azouri and Singer both spoke with Lipschultz on numerous occasions and informed Lipschultz that an additional $50,000 was needed.

25. On August 4, 2011, Lipschultz on behalf of GP and Singer on behalf of JSE executed an Additional Modified Investment Agreement (the "Additional Modified Investment Agreement"), whereby Plaintiffs agreed to invest an additional $50,000.

26. Pursuant to the Additional Modified Investment Agreement, in addition to the Return discussed in the Investment Agreement, GP was to also be paid an additional return of $300,000 for a total return between the Investment Agreement and Additional Modified Investment Agreement of $1,150,000.

### SINGER FAILS TO REPAY PLAINTIFFS, AND AZOURI DISCLOSES FOR THE FIRST TIME THAT HE WAS ENTITLED TO A FINDER'S FEE BASED UPON LIPSCHULTZ'S INVESTMENT

27. Throughout 2011, 2012 and 2013, Lipschultz consistently contacted Singer regarding the status of the Universal and Sony deals. In response, Singer consistently informed Lipschultz that the Universal and Sony deals were progressing and that he was optimistic.

28. Lipschultz has never been repaid his Investment or any portion of the stated return referenced in the Investment Agreement and Additional Modified Investment Agreement.

29. In the Fall of 2013, Lipschultz had a telephone call with Azouri during which Azouri stated that he hoped that Singer came through with the Universal and Sony deals. Upon further inquiry from Lipschultz, Azouri disclosed for the first time that he would be receiving a commission too, based on a finder's fee for originating Plaintiffs' investment, in the same amount that was to be paid to Plaintiffs as a Return -- $1,150,000.

30. At the time Defendants solicited Lipschultz's investment, each of them failed to disclose that Azouri would receive a finder's fee from Lipschultz's investment.

31. At the time Defendants solicited Lipschultz's investment, each of them failed to

disclose that Azouri is not a licensed securities broker.

32. At the time Defendants solicited Lipschultz's investment, each of them failed to disclose that Singer is not a licensed securities broker.

33. At the time Defendants solicited Lipschultz's investment, each of them failed to disclose that both the Investment Agreement and the Additional Modified Investment Agreement was neither registered as a security nor had any notice of exemption been filed.

## FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder)**

34. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 33 of the Complaint as if fully set forth herein..

35. The Investment Agreement and Additional Modified Investment Agreement were offered to Lipschultz as securities.

36. In soliciting Lipschultz's investment, Singer and JSE made use of the telephone lines and the Internet to explain the "deal".

37. Defendant Azouri was an undisclosed agent of Singer and JSE, and also made use of the telephone lines and the Internet to explain the "deal"--although Azouri did so under the guise that he was simply acting as a mutual friend of Singer and Lipschultz.

38. Defendants and each of them knew, or were reckless in failing to know that their statements made via the telephone and/or email, and the documents provided to Lipschultz contained numerous material misstatements and omissions regarding, among other things, the risks of the business and the fact that Azouri would receive a finder's fee based upon Lipschultz's investment.

39. Defendants through their conduct as described herein obtained $220,000 from Plaintiffs.

40. In the manner described above, Defendants and each of them in connection with the sale of these securities and through the use of the means or instrumentality of interstate

commerce or of the mails, directly or indirectly (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would operate as fraud or deceit upon purchasers of securities, in violation of §10 (b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §240.10b-5), promulgated thereunder.

41.   During this period Defendants and each of them carried out a plan, scheme, and course of conduct which was intended to and did deceive Plaintiffs as alleged herein and caused Plaintiffs to execute and fund the investments as stated in the Investment Agreement and Additional Modified Investment Agreement. In furtherance of this unlawful plan, scheme, and course of conduct, Defendants and each of them took the actions set forth herein.

42.   The statements made by the Defendants during this time period were materially false and misleading because at the time they were made, the Defendants and each of them knew or recklessly ignored, and thus failed to disclose, the true nature of this investment scheme including Azouri's secret role as an agent of Singer and JSE who would receive a finder's fee based upon Plaintiffs' investment.

43.   Defendants' misrepresentations and omissions were material in that there was a substantial likelihood that a reasonable investor would have considered them important in deciding whether to execute and fund the investments as stated in the Investment Agreement and Additional Modified Investment Agreement.

44.   Had the Plaintiffs known of the true facts, including the true extent of the risks involved and Azouri's secret role as an agent of Singer and JSE who would receive a finder's fee based upon Plaintiffs' investment, which were not disclosed by the Defendants, Plaintiffs would not have funded the investments as stated in the Investment Agreement and Additional Modified Investment Agreement. As a result, Plaintiffs have lost their entire $220,000 investment. Hence, Plaintiffs were damaged by the Defendants in violation of Section 10(b)

and Rule 10b-5.

46. Plaintiffs have been required to retain counsel in this matter, and therefore are entitled to attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**(Fraudulent Omission / Violation of Nevada Uniform Securities Act, NRS §§ 90.570 & 90.660)**

46. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47. Commencing in January of 2011, Defendants made material omissions of fact in an effort to conceal from Plaintiffs that Azouri had a financial inventive in Plaintiffs' investment and that Azouri was acting as an agent of Singer and JSE in selling securities and providing information directly and indirectly to Lipschultz, as described in Paragraphs 1 through 33, and those failures to disclose and efforts to conceal constitute a fraud upon Plaintiffs and a violation of NRS 90.570.

48. Defendants knew that their omissions were material.

49. Plaintiffs justifiably relied upon such misrepresentations made by Defendants by entering into the Investment Agreement and Additional Modified Investment Agreement and by transferring the funds to JSE, and Plaintiffs would not have entered into the Investment Agreement and Additional Modified Investment Agreement or remitted any funds pursuant to those documents if Plaintiffs had known the true facts.

50. As a direct and proximate cause of Defendants' wrongful actions, Plaintiffs have suffered damages in an amount to be proven at trial, but in excess of $75,000.

51. Plaintiffs hereby tender the securities they purchased from Defendants and demand rescission of the Investment Agreement and Additional Modified Investment Agreement, and all other remedies available in law or equity.

52. The actions of Defendants were intentional, willful and malicious, and Plaintiffs are entitled to punitive and exemplary damages pursuant to NRS 42.005.

53. It has been necessary for Plaintiffs to retain the services of attorneys to pursue this claim and they are entitled to recover their reasonable costs and attorneys' fees as damages pursuant to NRS 90.660.

### THIRD CLAIM FOR RELIEF

**(Violation of Nevada Uniform Securities Act, NRS §§ 90.310, 90.460 & 90.660)**

54. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55. Defendants sold the Investment Agreement and Additional Modified Investment Agreement as securities in the State of Nevada.

56. At all times relevant, the Investment Agreement and Additional Modified Investment Agreement were neither registered pursuant to the Nevada Securities Act nor exempt from registration.

57. At all times relevant, none of the Defendants was licensed to sell securities in the State of Nevada as required by the Nevada Securities Act and none of them was exempt from such licensure.

58. Defendants sold non-registered securities in the State of Nevada in violation of NRS 90.460, and at all times relevant Defendants were not licensed to sell securities in the State of Nevada in violation of NRS 90.310.

59. As a direct and proximate cause of Defendants' wrongful actions, Plaintiffs have suffered damages in an amount to be proven at trial, but in excess of $75,000.

60. Plaintiffs hereby tender the securities they purchased from Defendants and demand rescission of the Investment Agreement and Additional Modified Investment Agreement, and all other remedies available in law or equity.

61. It has been necessary for Plaintiffs to retain the services of attorneys to pursue this claim and they are entitled to recover their reasonable costs and attorneys' fees as damages pursuant to NRS 90.660.

## FOURTH CLAIM FOR RELIEF

### (Conversion)

62. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 61 of the Complaint as if fully set forth herein..

63. Defendants have improperly exercised dominion over Plaintiffs' assets without the consent of Plaintiffs, and have denied, defied and wrongfully interfered with Plaintiffs' right to exercise complete and exclusive dominion over such assets.

64. Defendants' conduct constitutes a conversion of Plaintiffs' property and as a direct and proximate cause of Defendants' wrongful actions, Plaintiffs have suffered damages in an amount to be proven at trial, but in excess of $75,000.

65. The actions of Defendants were intentional, willful and malicious, and Plaintiffs are entitled to punitive and exemplary damages pursuant to NRS 42.005.

66. It has been necessary for Plaintiffs to retain the services of attorneys to pursue this claim and they are entitled to recover their reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Rescission)

67. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 66 of the Complaint as if fully set forth herein..

68. Defendants by their misrepresentations, untrue statements and wrongful omissions wrongfully and intentionally deceived Plaintiffs to induce them into entering into the Investment Agreement and Additional Modified Investment Agreement.

69. Plaintiffs are entitled to rescission of the Investment Agreement and Additional Modified Investment Agreement.

70. It has been necessary for Plaintiffs to retain the services of attorneys to pursue this claim and they are entitled to recover their reasonable costs and attorneys' fees as damages pursuant to NRS 90.660.

WHEREFORE, Plaintiffs pray for relief as follows:

    A.    For monetary damages in excess of $75,000 on all claims;

    B.    For costs and attorneys' fees incurred in pursuing this action;

    C.    For a finding that the actions of Defendants were intentional, willful and malicious, and Plaintiffs are entitled to punitive and exemplary damages; and

    D.    For such other and further relief as the Court deems proper.

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Robert Hernquist
Robert Hernquist, Nevada Bar No. 10616
Kimberly P. Stein, Nevada Bar No. 8675

*Attorneys for Plaintiffs Marvin Lipschultz and Golden Palm Investments LP*